J. E. NEWKIRK v. TENNESSEE METAL CULVERT COMPANY, et al.

Middle Section. May 28, 1932.

Petition for Certiorari denied by Supreme Court, January 2, 1933.

Norman Farrell, of Nashville, for Complainant.

M. P. O'Connor, of Nashville, for defendant.

DeWITT, J. This is a suit on a note for $943.24, dated December 15, 1926, executed by the General Road Supply Company (a trade name of the Tennessee Metal Culvert Company), payable sixty days after date, to the order of the Inland Construction Equipment Corporation of Keokuk, Iowa, subsequently endorsed to and owned by complainant J. E. Newkirk.

Upon the face of the note is the following provision, "Note to be signed in accordance with terms of contract of November 9, 1926." The note was given for purchase by the General Road Supply Company of a road-building machine, composed of a Mandt Crawler Track and set of grousers from the Inland Construction Equipment Corporation. The defendants denied liability, averring in substance that the contract was never completed, it being a sale on approval; and that the seller never complied with the contract by demonstrating the efficiency of the equipment in actual work.

The contract was entered into in writing on November 9, 1926. It contains among other provisions, the following:

"We guarantee the above equipment to stand a reasonable demonstration to the satisfaction of the General Road Supply Company, and to meet with their approval. If not, we agree to return their money upon receipt of paid freight bill back to the factory. Discounts 15-15 & 5% to be settled by a 60 day note with 6% interest. All orders must be approved at home office."

The contract was procured of the defendants in behalf of the Inland Construction Equipment Corporation by D. J. Alston, salesman. The machinery was delivered in Nashville in December, 1926.

Upon the hearing the Chancellor dismissed the bill and the complainant has appealed and assigned errors.

It is first insisted that the Chancellor erred in holding the contract of sale to be a conditional one in the sense that title to the property did not pass, because the goods were not put in a deliverable state, and there was no acceptance of the article sold.

In our opinion the equipment was not delivered to the buyer "on sale or return," but on approval or on trial or on satisfaction, and therefore the property did not pass to the buyer. Section 19 of the Uniform Sales Act (Chapter 118 of the Acts of 1919, Code section 7212) defines a "sale or return" contract as one indicating an intention to make a present sale but to give the buyer an option to return the goods instead of paying the price. The property passes to the buyer on delivery but he may revest the property in the seller by returning or tendering the goods within the time fixed in the contract, or if no time has been fixed, within a reasonable time. The rule

which in our view is applicable here is also stated therein that when the goods are delivered to the buyer on approval or on trial or satisfaction, or through similar terms, the property therein passes to the buyer when he signifies his approval or acceptance to the seller, or does any other act adopting the transaction; or fails within the time fixed, or if no time has been fixed, within a reasonable time, to give notice of rejection while retaining the goods. .

It is evident that it was the intention of the parties to make an approval by the buyer a condition of its liability, with the exception that if it should pay the consideration it should ship the equipment back to the seller at its own expense as a condition of receiving back the money paid.

There was to be no sale if the equipment was not satisfactory after a trial or test. Such trial or test was first necessary, then a satisfaction therewith and consequent approval. These were all conditions of liability. The contract was in the nature of an option to purchase if the goods should prove satisfactory, the approval of the buyer being a condition precedent.

In a "sale or return" contract, the right of purchase or return rests entirely on the option of the buyer rather than on the character or quality of the goods. Sturm v. Boker, 150 U. S., 312, 37 L. Ed., 1093. A fair interpretation of the contract in question is that if the equipment should stand demonstration to the reasonable satisfaction of the buyer it must meet with its approval and it would be liable. The contract was dependent upon the character and quality of the goods, not the mere wish of the buyer. The buyer was not bound to accept nor entitled to reject the goods until the reasonable demonstration contemplated in the contract should be made. 55 C. J., 431, notes 32 and 33 and cases cited.

The Chancellor held that title did not pass because the goods were not put in a deliverable state. Rule 2 of section 19 of said Uniform Sales Act is, "Where there is a contract to sell specific goods, and the seller is bound to do something to the goods for the purpose of putting them into a deliverable state, the property does not pass until such thing be done."

It is insisted that the contract did not require the seller to demonstrate the machine, but merely warranted that the machinery would stand a reasonable demonstration to the satisfaction of the buyer and meet with its approval, but the course of dealing between the parties showed the intention of the seller through its agent Alston to have charge of the demonstration; we concur fully with the Chancellor in the following finding of facts made by him:

"This machinery was delivered in Nashville in December, 1926, and on or about January 8, 1927, Mr. Alston the salesman, made a demonstration by putting defendants' men on the machinery

and showing them how to operate it. After they had run it around for about an hour or so, the brake bands on the machinery broke. Mr. Alston told the defendants that this company was getting out heavier brake bands and wired the company to ship these brake bands at once. He promised the defendants that he would have a service man, then in New Orleans, come and put the heavier brake bands on and make a demonstration for them. Before he demonstrated the machinery he told them the brake bands were too light. He notified the mechanic, whom his company had in New Orleans for the purpose of putting heavier brake bands on a machine it had sold somewhat like the one involved, to come and put the heavy brake bands on the machine shipped to defendants. This service man was routed by the seller to put these bands on the machinery it had sold.

"He testified that he did not have any authority to make any adjustments without getting in touch with his house, but it appears from the record that he sent a night letter to the seller to get the brake bands as quickly as possible, notified a man that this company had on the road to come to Nashville and put the brake bands on the machinery and demonstrate it, and in accordance with this telegram the seller on January 8, shipped the brake bands and they reached Nashville on or about January 14, 1927.

"Alston never came back to make any demonstration, nor did the mechanic or service man, who was in New Orleans for the purpose of putting on heavier brake bands on a machine somewhat like the one in question, ever come to Nashville and put the brake bands on the machinery involved and make a demonstration of it.

"Alston told the defendant company not to make a demonstration of the machinery until the mechanic put the heavy brake bands on it. The Inland Construction & Equipment Corporation ceased to do business about April 1, 1927, and it was in financial difficulties some time prior thereto. It went into bankruptcy in August, 1928. As stated, Alson attempted to demonstrate the working of the machinery about January 8, 1927, and promised the defendant company to have a service man or mechanic put the heavier brake bands on the machinery and make a demonstration of it. The defendant company, not hearing further from Alston and the mechanic not arriving at their place of business in Nashville, on February 1, 1927, addressed a letter to the Inland Construction & Equipment Corporation which is an exhibit in the record, called to the attention of the company that Mr. Alston had ordered new brake bands to replace those that were broken and would have a service man there to install

it, and that Mr. Alston had insisted that they wait for his service man, which they had agreed to do, although they had a service man who could probably go ahead and put on these brake bands. Receiving no reply to this letter, on February 10, 1927, they again wrote the Inland Construction & Equipment Corporation a letter which is exhibited in the record, in substance notifying it that the heavy brake bands had been here for some time awaiting the arrival of their service man and calling on them to have the matter adjusted as soon as possible as they were interested in making some demonstrations.

"The defendant company received no answer to this letter and again on February 19, 1927, addressed another letter to the Inland Construction & Equipment Corporation, which is exhibited in the record, which in substance notified the company that their service man had not arrived in Nashville and asking the company to let them hear from it by return mail, telling them what to expect and stating that they wanted an opportunity to demonstrate this machine, and when this was done they wanted it to be in first class condition.

"The defendant company received no answer to this letter and on July 18, 1927, wrote the Inland Construction & Equipment Corporation a letter which is exhibited in the record, in substance stating to it that Mr. Alston had ordered the heavier brake bands by wire on January 8, 1927, and had told them he expected to have his service man in Nashville in the next few days to put them on the tractor, and give them a successful demonstration, and that they had written the company two or three times asking them to send a service man to repair the broken bands and to help it in a demonstration and that they had not complied with this request. This letter contained among other things, the following:

" 'We do not think that the machine will prove satisfactory in this territory, therefore, we are asking you to give us shipping instructions. If there is some other place in this territory that you would like us to ship it to, we will be glad to follow your instructions, otherwise we will ship it back to you.' "

The original contract was therefore amended by mutual agreement. The Inland Construction & Equipment Corporation agreed to replace the broken brake bands with heavier brake bands, have its mechanic install these brake bands and make a reasonable demonstration of the machine. This agreement was made by its agent, Alston. As found by the Chancellor: The Inland Construction & Equipment Corporation ratified and approved this agreement made by its salesman, Mr. Alston, by shipping the heavier brake bands, and sending out a mechanic to install these brake bands under the

direction of Mr. Alston. They knew when he sent in the wire for the heavier brake bands, that this mechanic, who was under his direction, was then in New Orleans engaged in installing heavier brake bands on a machine like the one in question, would install these brake bands and made a demonstration of the machine.

The direction given by Alston to the defendant not to make a demonstration of the machinery until the mechanic employed by the seller should put the heavy brake bands in it absolved the defendant from any duty to make the test or demonstration. The seller never complied with the contract, although it was in active business for more than a month and a half after the note matured.

The machinery was therefore not put in a deliverable state as the seller had undertaken to do. It was never approved and the defendant never became liable for the purchase price. It was not a sale with title passing, subject to rescission by the buyer, if dissatisfied, by a return of the machinery back to the factory.

A further question arises, whether or not the defendant is obligated to return the machinery and at its own expense. In its letter of July 18, 1927, the defendant wrote to the Inland Construction & Equipment Corporation:

"We wrote you two or three times asking that you send your service man to repair the broken band and to help us in a demonstration, so far we have seen nothing of this man. We do not believe that the machine will prove satisfactory in this territory, therefore we are asking you to give us shipping instructions. If there is some other place in this territory that you would like us to ship it to we will be glad to follow your instructions, otherwise we will ship it back to you."

The Chancellor held that the defendant was under no obligation to ship back the machinery until a demonstration should be made; that the seller breached its contract and thereby relieved the defendant from this obligation. It is insisted that this was error because the defendant, in the letter quoted from, still recognized this obligation. In our opinion, the Chancellor's conclusion was correct. If the letter contained an admission of obligation to return the machinery, no shipping directions were given, no acceptance of the offer to return was made. The complainant, the assignee of the note, has waived any return of the machinery at the defendant's expense by suing on the note, insisting that the contract has been performed. The defendant has held the goods only because of these conditions, and not because of any refusal on its part to perform its stipulations under the contract.

The obligation to return the machinery was not to arise until a reasonable demonstration was made with a result so unsatisfactory as to justify a disapproval by the defendant. The defendant was

willing to buy and pay for it after approval. It was never given the opportunity to determine whether or not it would approve and accept the machinery. The contingency upon which the obligation depended never happened.

These conclusions are determinative of all the issues presented. The assignments of error are overruled and the decree of the Chancery Court dismissing the bill is affirmed. The costs of the appeal will be adjudged against the complainant and the surety on his appeal bond.

Faw, P. J., and Crownover, J., concur.